Kenneth Carroad v. Commissioner. Alexander H. Carroad and Ada Carroad v. Commissioner.
Carroad v. Commissioner
Docket Nos. 10194, 10198.
United States Tax Court
1947 Tax Ct. Memo LEXIS 4; 6 T.C.M. (CCH) 1349; T.C.M. (RIA) 47342; December 31, 1947
*4 Kenneth Carroad, Esq., for the petitioners. J. Frost Walker, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: These proceedings, consolidated for hearing and report, involve income tax liability of petitioners for the calendar year 1941. Respondent determined a deficiency in the amount of $2,766.26 with respect to petitioner Kenneth Carroad, and $1,483.96 with respect to petitioners Alexander H. Carroad and Ada Carroad. The question presented is whether Carroad & Carroad, a law partnership consisting of Kenneth Carroad and Alexander H. Carroad, is entitled to a deduction of $8,000 paid on December 29, 1941 by Kenneth Carroad on behalf of the law partnership to the accounting partnership of Carroad, Frankel and Jackson. The case was submitted on oral testimony and exhibits from which we make the following. Findings of Fact Since 1935 Kenneth Carroad and Alexander H. Carroad, brothers, have been engaged as partners in the practice of law in the City of New York under the firm name of Carroad & Carroad, sharing partnership profits 60 per cent and 40 per cent, respectively. Each filed an income tax return for the calendar *5 year 1941 with the collector of internal revenue for the second district of New York. The type of practice in which they were engaged involved a large amount of clerical and accounting work and it was necessary for the firm to employ accountants and auditors and maintain a rather large clerical staff. The clerical and accounting work was under the direction of Kenneth Carroad. As the pressure of the accounting work increased it was deemed advisable to organize a separate accounting firm. Kenneth Carroad became acquainted with Ben E. Jackson, a certified public accountant employed as an accountant investigator by the Securities & Exchange Commission, and Nathan Frankel, a certified public accountant employed for many years by the Federal Bureau of Investigation as accounting supervisor. Discussions among Kenneth Carroad, Ben E. Jackson, Nathan Frankel and Charles Eisen, an accountant employed by the law firm, led to the formation of the accounting firm. A written agreement to that effect was entered into between them on November 22, 1941 establishing the accounting firm of Carroad, Frankel & Jackson to do general accounting and audit work, litigation accounting, special investigations, *6 tax work, preparation of an analyses of figures and data. The pertinent parts of the agreement after reciting that Frankel and Jackson were gainfully employed in independent pursuits in which each received a regular salary and that Kenneth Carroad was desirous of having Frankel, Jackson and Eisen become partners with him in the occupation or profession of accounting as therein set forth, and that Frankel and Jackson had agreed to discontinue any gainful employment other than as specified therein, are as follows: * * *
"4. In consideration of FRANKEL and JACKSON entering into such partnership, CARROAD is to supply the necessary funds, equipment and assets in order to carry out the work of the partnership, for the period beginning January 2, 1942 and ending December 31, 1942. The obligation of CARROAD to make such loans or advances shall be irrevocable, and shall carry no legal obligation or duty by FRANKEL and JACKSON to repay any of the advances made to them. Such advances shall include the following: "(a) A monthly advance to FRANKEL of $400.00 per month, as long as he is able and willing to perform the services expected of him. "(b) A monthly advance to JACKSON of $400.00 *7 per month, as long as he is able and willing to perform the services expected of him. "(c) It is further agreed that such monthly advances to FRANKEL and JACKSON will not extend for a period of more than ten months from January 2, 1942 unless the partnership had benefited from sufficient services rendered and cases brought in by the reputation or ability of FRANKEL and JACKSON, from which work the estimated or actual fees shall be equal to at least $10,000.00. However, although CARROAD does guarantee to advance only the sum of $8,000.00 to FRANKEL and JACKSON, he may at his own discretion continue to advance such monthly payments on account, at any time after the ten months, if he believes the future activities of this partnership will be profitable. "The said CARROAD agrees to advance the sum of $8,000.00 in cash to FRANKEL and JACKSON in the form of a bank deposit opened in a New York bank, which deposit shall be in the name of CARROAD, FRANKEL & JACKSON, (a partnership) but upon which funds only FRANKEL and JACKSON jointly may draw checks for their own use. Such deposit shall be made on or about January 2, 1942. Such funds shall be used by FRANKEL and JACKSON to pay themselves *8 the stipulated drawing of $400.00 per month to each of them. The funds may not be used for any other purpose without the written consent of KENNETH CARROAD. * * *
"7. The net profits in each year shall be determined upon and divided as follows - "(a) Each of the partners shall be credited with the folowing drawings: - CARROAD
$5,000.00 per annum.
FRANKEL
$5,000.00 per annum.
JACKSON
$5,000.00 per annum.
EISEN
$1,200.00 per annum.
"(b) The balance of net profits, if any, remaining after the payment of the sums mentioned in subdivision (a) hereof, shall be divided among the partners in the following proportion: - CARROAD
37 1/2%
FRANKEL
25%
JACKSON
25%
EISEN
12 1/2%
"The parties hereto shall share all losses at the same proportions. * * *
"(d) It is clearly understood that the sum of $4,000.00 to FRANKEL and $4,000.00 to JACKSON which is advanced by CARROAD pursuant to paragraph (4) shall be treated as a part of the $5,000.00 drawing to which FRANKEL and JACKSON are each entitled herein. Thus for the calendar year 1942, FRANKEL and JACKSON each shall be entitled to draw an additional $1,000.00 over the $4,000.00 to be *9 placed to the credit of each of them in the special bank deposit provided in paragraph (4). The sum of $8,000.00 thus advanced by CARROAD shall be repaid to him out of partnership gross income, as promptly as funds are reasonably made available (but only after paying other partnership expenses which may be outstanding). Beginning with 1943, all drawings shall be only out of partnership gorss income, and CARROAD will no longer be legally obligated to make any advances to FRANKEL and JACKSON. * * *
"13. Any accounting work done by the partnership or its employees as special services to CARROAD or his law associates, in aid of any law cases, shall be separately determined; for such special accounting services, the accounting partnership shall be entitled to receive an accounting fee, on the same basis as any other accounting firm would be entitled to receive fees, if CARROAD had hired such outside firm, or if the client had hired such outside accounting firm. It is agreed as a limitation that the accounting fee for such special services shall in no event and under no circumstances ever exceed in amount, the amount of the net fee received by CARROAD from the client. In general, *10 such accounting fee shall be computed on a sound accounting basis, such as a per diem charge, or a weekly charge. The amount of such fee shall be separately billed and paid; and the accounting for such fee shall be effected in substance and form so as to avoid any charge that a commingling of fee interests has taken place in violation of the Canons of Ethics of the law profession or of the accounting profession. In any event, no part of the law fees earned by and paid to CARROAD shall be shared with persons not lawyers. Nothing in this instrument shall operate to the contrary." On December 29, 1941 checks for $4,000 each were given to Frankel and Jackson, which were endorsed by them respectively, for deposit to the credit of Carroad, Frankel & Jackson Special a/c, deposited on December 30, 1941 and cleared December 31, 1941 pursuant to the provisions of paragraphs 4 and 7 (d) of the agreement. If the $8,000 had ever been repaid out of the accounting partnership gross income it would have gone to the firm of Carroad & Carroad. Also, Kenneth Carroad's share of the profits of the accounting firm belonged to the law firm. During the year 1942 the law firm was the principal client of *11 the accounting firm. The accounting firm and the law firm shared the same offices, the same staff of stenographer, clerical employes, and a common switchboard. The agreement provided these facilities were to be supplied at some normal or agreed figure. The law firm and its partners conducted their business on a calendar year cash receipts and disbursements basis and reported their income accordingly. No business was conducted by the accounting firm during 1941. Ada Carroad is the wife of Alexander H. Carroad. The $8,000 payment by Kenneth Carroad on behalf of the law partnership was an irrevocable guarantee that Frankel and Jackson would each receive at least $400 per month for a period of ten months beginning January 2, 1942, as a part of the $5,000 drawing account they were entitled to receive under the terms of the contract during the first year of the company's operation, regardless of the success or failure of the accounting partnership. The Commissioner disallowed the $8,000 claimed as a deduction in the 1941 return of the law partnership thereby increasing the distributive share of each partner and after making certain other adjustments not here in controversy, as a *12 result thereof added $4,599.79 to income in the case of Kenneth Carroad, and $2,958.42 in the case of Alexander H. Carroad and Ada Carroad, and determined the deficiencies accordingly. Opinion The petitioner contends the $8,000 payment advanced by Kenneth Carroad on behalf of the law partnership of Carroad & Carroad on December 29, 1941 is deductible under section 23 (a) (1) (A) Internal Revenue Code, set forth in the margin [1] as a business expense, accounting expense or as fees paid. Respondent contends that in order to qualify as a deduction of the law partnership of Carroad & Carroad under the statute it is necessary that the payment meets three requisites as follows: (1) it must be incurred in the trade or business carried on by the taxpayer; (2) it must be ordinary and necessary, and (3) if for personal services it must be for personal services actually rendered. He contends that these statutory requirements are not here met. The $8,000 was put up to aid in the establishment of a new venture, a partnership to engage in accounting, by assuring Frankel and Jackson that if they would join therein they would each have a monthly drawing account of at least *13 $400 for a period of ten months beginning January 2, 1942, regardless of the success or failure of the accounting partnership. They were leaving the employment in which they were then engaged and entering into a new venture which might or might not be successful to the extent of earnings sufficient to meet their drawing account of $5,000 out of profits of the business as provided in their written agreement. If any balance of net profits remained after ordinary operating expenses were paid and each partner credited with his specified drawing account, the remaining net profits if any, were to be distributed 37 1/2 per cent to Kenneth Carroad, 25 per cent to Frankel, 25 per cent to Jackson, and 12 1/2 per cent to Eisen. Any amount credited or paid to Kenneth Carroad belonged to the law partnership of Carroad & Carroad. The $400 monthly drawing account which Frankel and Jackson were each to receive for a period of ten months out of the $8,000 advanced was to be treated as a part of their drawing account of $5,000 out of the profits of the business. To be deductible as a business expense the statute requires that the expense must be both ordinary and necessary. The facts before us fail *14 to show that the $8,000 here advanced was for ordinary and necessary expenses of the law firm of Carroad & Carroad paid or incurred during the taxable year in carrying on its business. It may have been considered advisable for the law firm of Carroad & Carroad to establish a separate accounting partnership to carry on the business of accounting but it cannot be said that it was "an ordinary and necessary" expense of the law partnership. See Deputy, et al. v. DuPont, 308 U.S. 488. The expenditure was not an ordinary and necessary business expense of the law partnership of Carroad & Carroad, but was more in the nature of a capital advance in a new business, as section 7 (d) of the agreement provides the sum was to be repaid "out of partnership gross income, as promptly as funds are reasonably made available (but only after paying other partnership *15 expenses which may be outstanding)." The fact that the advance of the $8,000 was irrevocable and carried no legal obligation or duty on the part of Frankel and Jackson to repay is immaterial. The nature of the payment is the pertinent question involved. Being in the nature of a capital outlay it would not be deductible as compensation paid for services actually rendered. Moreover, Frankel and Jackson were each to receive their drawing account of $5,000 per annum from the profits of the accounting firm in the following year. If the earnings of the accounting firm were sufficient no part of the amount advanced by the law firm would ever reach Frankel and Jackson as compensation. We conclude that no part of the $8,000 advanced by Kenneth Carroad is deductible as an ordinary and necessary expense paid or incurred by the law partnership during the taxable year in carrying on its business or for salaries or other compensation for personal services actually rendered. Decision will be entered for the respondent. Footnotes
1. Sec. 23(a)(1)(A): (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *↩